UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

PATRICK FITZGERALD ESTER,                                     Civil No. 05-49 (DWF/JSM)

      Plaintiff,

                                               REPORT AND
                                    RECOMMENDATION

      v.

DAINIEL PAUL FAFLAK, and
DAVID SEBESTA,

      Defendants.

The above matter came on before the undersigned upon defendants' Motion to Dismiss or for Summary Judgment [Docket No. 39]; plaintiff's Motion to Amend/Correct Amended Complaint [Docket No. 44]; Plaintiff's Motion Requesting Leave to File a 2nd Amended Complaint and for Stay of Defendant Daniel Paul Faflak and David Sebesta's Motion for Summary Judgment [Docket No. 45]; and Plaintiff's Motion Requesting Denial of Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 47].

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. For the reasons discussed below, it is recommended that:

      1.     Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 39] be **GRANTED** in part and **DENIED** in part as follows:

                  a.     Defendants' Motion to Dismiss should be **GRANTED** as to plaintiff's claims of malicious prosecution, violations of the Fifth and Fourteenth Amendments, and plaintiff's claims under 42 U.S.C. §§ 1983 and 1985.

1

      b.     Defendants' Motion to Dismiss should be **DENIED** as to plaintiff's Fourth Amendment Claim under <u>Bivens</u>.

      c.     Defendants' Motion for Summary Judgment should be **GRANTED** as to plaintiff's Fourth Amendment Claim under <u>Bivens</u>.

      d.     In light of this Court's recommendations in paragraphs 1(a) and (c), that plaintiff's suit against defendants be dismissed with prejudice.

2.     Plaintiff's Motion to Amend/Correct Amended Complaint [Docket No. 44] be **GRANTED** in part and **DENIED** in part as follows:[1]

      a.     Ester's attempt to expand his claims for malicious prosecution, violations of the Fifth and Fourteenth Amendments, and claims under 42 U.S.C. §§ 1983 and 1985 in his proposed Second Amended Complaint should be **DENIED** on the grounds that they are futile.

      b.     Ester's motion to amend to expand his Fourth Amendment claim as described in his proposed Second Amended Complaint, should be **GRANTED**.

3.     Plaintiff's Motion Requesting Leave to File a 2nd Amended Complaint and for Stay of Defendant Daniel Paul Faflak and David Sebesta's Motion for Summary Judgment [Docket No. 45] be **DENIED** as moot; and

4.     Plaintiff's Motion Requesting Denial of Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 47] be **DENIED**.

---

[1]     Plaintiff's Motion to Amend/Correct Amended Complaint [Docket No. 44] and Motion Requesting Leave to File a 2nd Amended Complaint and for Stay of Defendant Daniel Paul Faflak and David Sebesta's Motion for Summary Judgment [Docket No. 45] would normally be addressed in an order as opposed to a report and recommendation, however, since the facts and issues in all the outstanding motions in this case are so intertwined, the Court has decided to address them all together as a part of this Report and Recommendation.

## I.  FACTUAL BACKGROUND

### A.   Allegations in Plaintiff's Amended Complaint

Plaintiff, Patrick Fitzgerald Ester, an inmate incarcerated in the Federal Correctional Institution-Oxford for a drug conviction unrelated to the present case, has instituted a suit against defendants Agent Paul Faflak and Detective David Sebesta for violations of his civil rights pursuant to 42 U.S.C. §§ 1983, 1985, and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  See Amended Complaint.  Ester claimed that defendants violated his Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution.  Id.  The factual basis for Ester's claims against defendants is as follows:

> On or about January 2000, Agent Daniel Paul Faflak, Jr. and Detective David Sebesta, both while acting in their individual capacity deprived me of liberty without due process of the law subjected me to an unreasonable seizure through malicious prosecution. Agent Daniel Paul Faflak and Detective David Sebesta conspired to maliciously prosecute me and did so through a fabricated Indictment of a fabricated drug charge, strictly for the purpose of pressuring me to give some information on an unrelated murder in which, I knew nothing about. Agent Daniel Paul Faflak and Detective David Sebesta signed and attested to the unfounded alleged drug charges in the criminal complaint to arrest me and caused me to spend six (6) months in jail until my trial started and ultimately the charges were dismissed on June 21, 2005.

Id.

Ester asked for monetary damages against defendants in the amount of two million dollars.

### B.   Factual Background Surrounding Ester's Incarceration

Detective Sebesta, with the Bloomington Police Department, and Agent Faflak with the Department of Homeland Security, Immigration and Customs Enforcement, were both involved in a controlled buy of crack cocaine at Champion's Bar.  See Declaration of Defendant Detective Sebesta ("Sebesta Decl."), ¶¶ 2-3; see also Declaration of Defendant Agent Faflak ("Faflak Decl."), ¶¶ 1, 2, 4, 5.  Agent Faflak was introduced to Selwyn Hall ("Hall"), an informant, who provided that he might be able to purchase drugs from members of a drug ring that was involved in the murder of Aryton Welch, including Ester.  See Faflak Decl., ¶ 2.  Agent Faflak claims that he corroborated the details of the information Hall had provided to him.  Id., ¶ 3.  On October 1, 1999, Hall contacted Agent Faflak and represented that he had set up a buy with plaintiff for October 4, 1999.  Id., ¶ 4.

On October 4, 1999, Agent Faflak picked up Hall and transported him to the 5th Precinct of the Minneapolis Police Department, where he was searched before the controlled buy and outfitted with an audio transmitting device.  Id., ¶ 5; see also Sebesta Decl., ¶ 4.  Hall was then driven to the Champion Bar's parking lot by law enforcement.  Faflak Decl., ¶ 6.  Hall entered Champion's Bar and left ten minutes after, reporting that he had met with Ester and purchased one bag of crack containing five rocks of a white substance that later was tested to be 22 grams of crack cocaine.  See Faflak Decl., ¶ 7; Sebesta Decl., ¶ 7. Hall stated that Ester was accompanied by a blond woman and surveillance officers observed Ester leaving Champion's Bar in the company of a blond female.  See Faflak Decl., ¶¶ 7-8; Sebesta Decl., ¶ 8.  The alleged encounter between Hall and Ester was not tape recorded.  Pl.'s Ex. 5 (Trial transcript at 90-91).  Detective Sebesta was operating a listening device at the time of the

4

meeting, however, the distance and background noise in the bar reduced the effectiveness of the transmission.  Sebesta Decl., ¶ 2.  Hall was unaware of this fact.  Id.

Agent Faflak claims that he testified truthfully to the grand jury, which also heard the testimony of Hall.  See Faflak Decl., ¶ 10.

On February 16, 2000, Ester was indicted on one count of allegedly distributing crack cocaine.  See Exhibit 1 to Defs.' Mem. (Criminal Docket for 00-cr-48 (MJD/JGL). Based on the Indictment, a bench warrant was issued for Ester's arrest on February 16, 2000. Id. The arrest warrant for Ester was executed by Agent Faflak and Detective Sebesta and Ester was arrested on February 17, 2000.   See Faflak Decl., ¶ 11; Sebesta Decl., ¶ 10. Ester was subsequently arraigned on February 22, 2000 by United States Magistrate Judge J. Earl Cudd and ordered detained pending his trial. See Exhibit 1 to Defs.' Mem. (Criminal Docket for 00-cr-48 (MJD/JGL).  On June 22, 2000, during the trial, the Government moved to dismiss the Indictment against Ester and United States District Judge Michael J. Davis granted the motion.  Id.

### C.    Ester's Proposed Second Amended Complaint

On September 14, 2005, defendants filed their motion to dismiss or for summary judgment.  On September 28, 2005, Ester moved this Court for an order permitting him to file a proposed second amended complaint, presumably for the purpose of addressing several of the issues raised by defendants in their motion.  In his motion, Ester indicated that by the proposed second amended complaint he sought to: (1) correct his assertion in the Amended Complaint that a criminal complaint existed that defendants had signed and attested to; (2)

provide more detail as to defendants' conspiratorial acts and set forth their personal involvement in carrying out these acts; (3) and change the basis of his Fourth Amendment claim from an unreasonable seizure of his person to "no probable cause existed for the defendants' actions until after they submitted a warrant and it became signed for my arrest, when they reasonably knew no probable cause whatsoever existed." See Plaintiff's Motion Requesting Leave to File a Second Amended Complaint and for Stay of Defendant's Daniel Paul Faflak and David Sebesta's Motion for Summary Judgement [sic] at pp. 1-2.

In Ester's proposed Second Amended Complaint, Ester sought to add the following "2d Amended Cause of Action" under §§ 1983, 1985, and Bivens:

> Each defendant has conspired to and did violate the plaintiff's civil and constitutional right's while acting under color of state law in their individual capacities through malicious prosecution and violated the plaintiff's 4th, 5th, and 14th amendment right's [sic].

See 2nd Amended Complaint for Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983, § 1985 and a Bivens Action ("proposed Second Amended Complaint") at p. 1. More specifically, Ester alleged that on or about February 2000, Agent Faflak and Detective Sebesta were investigating a drug ring that was implicated in a murder crime and that they believed Ester was accessory after-the-fact in the murder but did not have sufficient probable cause to arrest him. Id., ¶ 1. Ester claimed that Agent Faflak and Detective Sebesta, while acting in their individual capacities, conspired to initiate a malicious prosecution by fabricating a controlled buy of narcotics crime against him in order to pressure him for information on the murder. Id.

In the furtherance of this conspiracy, Ester asserted that Agent Faflak intentionally documented the use of a recording device to pick up a conversation inside a noisy building that he knew would not provide anything but static in order to feign compliance with procedure and bolster the fabricated buy. Id. Detective Sebesta's role in the alleged conspiracy was to document that he had conducted surveillance on the controlled buy when he had never observed any illegal activity. Id. Agent Faflak and Detective Sebesta then allegedly conspired to present the narcotics they obtained from a source other than Ester, along with an unclear audiotape and other alleged evidence to a prosecutor and a grand jury, to obtain an indictment against him, knowing that no reasonable officer, including themselves, would believe they had probable cause for the indictment and the drafting of his arrest warrant. Id. Ester alleged that Agent Faflak testified as a witness to the fabricated buy before the grand jury on the alleged charges against Ester. Id. In addition, Ester alleged that after he was arrested, Agent Faflak and Detective Sebesta conducted an interview of him and asked him questions about a murder they claimed he knew about. Id. According to Ester, when he told defendants he knew nothing of the murder, they told him that they would get even with him through the fabricated drug buy. Id.

It is Ester's position in his proposed Second Amended Complaint that defendants violated his Fourth Amendment rights by submitting a fabricated drug buy to a grand jury in the hopes that they would issue an indictment against him and to bolster the appearance of probable cause to a Magistrate Judge to have an arrest warrant against him issued, when they knew that no such probable cause existed for his arrest. Id. Ester also alleged that these

actions violated his Fifth Amendment Right to due process.  <u>Id.</u>

Similar to his Amended Complaint, Ester has asked for monetary damages against defendants totaling two million dollars in his proposed Second Amended Complaint.

Agent Faflak and Detective Sebesta moved to dismiss Ester's case under the Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim on the grounds that: (1) the elements of a <u>Bivens</u> cause of action are not alleged; and (2) Ester has failed to allege a violation of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments.  <u>See</u> Memorandum Supporting Motion to Dismiss or for Summary Judgment ("Defs.' Mem.") at pp. 7-24; Defendants' Response to Plaintiff's Motion to Amend Complaint ("Defs.' Amend. Opp.") at pp. 2-14;  Reply to Plaintiff's Motion Requesting Denial of Defendants' Motion to Dismiss or for Summary Judgment ("Defs.' Reply Mem.") at pp. 4-10.

Alternatively, Agent Faflak and Detective Sebesta have brought a motion for summary judgment seeking to dismiss Ester's case on the grounds that (1) Agent Faflak is entitled to absolute immunity for his grand jury testimony against Ester; and (2) Agent Faflak and Detective Sebesta are entitled to qualified immunity as matter of law.  <u>See</u> Defs.' Mem. at pp. 26-37.

## II.   MOTION TO DISMISS

### A.   Standard of Review

Defendants have brought a claim for dismissal under Rule 12 of the Federal Rules of Civil Procedure for failure to state claim.  When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts must view the complaint in the light most favorable to

the non-moving party and may dismiss the complaint only if no relief can be granted under any set of facts that could be proven consistently with the complaint's allegations.  Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam) (pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers). However, "the court need not accept, as true, wholly conclusory allegations, or unwarranted factual inferences.  Moreover, in treating the factual allegations of a complaint as true, the court does not, however, blindly accept the legal conclusions drawn by the pleader from the facts." Helleloid v. Indep. Sch. Dist. Number 361, 149 F. Supp.2d 863, 867 (D. Minn. 2001).  To avoid dismissal under Rule 12(b)(6), the "complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claims."  DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002).

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss under Rule 12(b)(6).  However, this does not mean that only the complaint itself may be reviewed.  As the Court noted in Porous Media Corp:

> When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint,' Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir.), cert. denied, __U.S.__, No. 98-1848, 1999 WL 319349 (U.S. June 24, 1999), as well as materials that are 'necessarily embraced by the pleadings.'  Piper Jaffray Cos. v. National Union Fire Ins. Co., 967 F. Supp. 1146, 1152 (D. Minn. 1997).  See also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure:

> Civil 2d § 1357, at 199 (1990)(court may consider 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint').

186 F.3d at 1079 (emphasis added).

With respect to Ester's motion to amend his Amended Complaint,  Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires."  The applicable standard is summarized in Foman v. Davis, 371 U.S. 178, 182 (1962), which states:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits.  In the absence of any apparent reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc. -- the leave should, as the rules require, be "freely given."

Futility of a proposed amendment is a valid reason for refusing leave to amend.  Id.; see also Becker v. Univ. of Nebraska, 191 F.3d 904, 908 (8th Cir. 1999) (citation omitted).

With these standards of review in mind, the Court now examines Ester's allegations against defendants.

**B.    Failure to Plead the Elements of a Bivens Cause of Action**

Defendants assert that Ester's case against them in their individual capacities should be dismissed as he has failed to plead the elements of a Bivens action.[2]  See Defs.' Mem. at

---

[2]    This Court notes that while Detective Sebesta is with the Bloomington Police Department, defendants asserted that for the purposes of this action he was a federal actor, as he was working as a part of a federal drug task force.  Therefore, defendants maintain that

p. 7.  In particular, defendants assert that Ester failed to allege what each defendant did to

violate his constitutional rights and that the Amended Complaint falsely alleges that defendants

falsely attested to unfounded drug charges in a criminal complaint in order to arrest Ester.  Id.

at pp. 8-11.  In response, Ester claims that he has remedied this defect in his proposed

Second Amended Complaint.  See Plaintiff's Memorandum in Support of Motion to Deny

Defendants Motion to Dismiss or For Summary Judgement [sic] ("Pl.'s Mem.") at pp. 5-6.

Thus, given Ester's motion to file a Second Amended Complaint, this Court must examine it to

determine whether it cures the alleged deficiencies in pleading a Bivens action, as argued by

defendants.

The proposed Second Amended Complaint alleges the following regarding the actions

of Agent Faflak and Detective Sebesta:

- Agent Faflak and Detective Sebesta, while acting in their individual capacities conspired to initiate a malicious prosecution by fabricating a controlled buy of narcotics crime against him in order to pressure him for information in a murder investigation.

---

Ester's action is one under Bivens v. Six Unknown Named Federal Narcotics Agents, 403 U.S. 388 (1971), the federal counterpart to 42 U.S.C. §1983.  See Christian v. Crawford, 907 F.2d 808, 810 (8th Cir. 1990) (per curiam) ("An action under Bivens is almost identical to an action under section 1983, except that the former is maintained against federal officials, while the latter is against state officials.").  Ester has not contested this assertion and, accordingly, this Court finds that for the purposes of this case, Detective Sebesta was a federal actor.  See Bordeaux v. Lynch, 958 F. Supp. 77, 84 (N.D.N.Y. 1997) (finding that police officers assigned to federal drug task force were acting as federal employees for the purposes of determining whether § 1983 or Bivens applied).  A federal actor cannot be held liable under 42 U.S.C. § 1983, as the statute is limited to the actions of state actors.  See Federer v. Gephardt, 363 F.3d 754, 758 (8th Cir. 2004) (citation omitted).  Given that Agent Faflak and Detective Sebesta, are federal actors for the purposes of this case, defendants' motion to dismiss as to Ester's 42 U.S.C. § 1983 claims should be granted.

- In the furtherance of this conspiracy, Agent Faflak intentionally documented the use of a recording device to pick up a conversation inside a noisy building that he knew would not provide anything but static in order to feign compliance with procedure and bolster the fabricated buy.

- Detective Sebesta's role in the alleged conspiracy was to document that he had conducted surveillance on the controlled buy, when he had never observed any illegal activity.

- Agent Faflak and Detective Sebesta then allegedly conspired to present narcotics they obtained from a source other than Ester, along with an unclear audiotape and other evidence to the prosecutor and a grand jury to obtain an indictment against him, knowing that they had no probable cause for the indictment and his resulting arrest.

- After Ester's arrest, Agent Faflak and Detective Sebesta told him that they would get even with him through the drug buy for failing to answer questions about a murder case.

See proposed Second Amended Complaint, ¶ 1.

This Court finds that these allegations set forth the specific conduct that Ester claims Agent Faflak and Detective Sebesta allegedly engaged in to violate Ester's rights. Further, the proposed Second Amended Complaint deletes his earlier claim that he was arrested as a consequence of a criminal complaint. As such, for the purpose of the notice requirement of Federal Rules of Civil Procedure Rule 8, this Court finds that if it were to grant Ester's motion to amend his Amended Complaint, the proposed Second Amended Complaint would provide Agent Faflak and Detective Sebesta adequate notice of the facts underlying his claims against them under Bivens, thereby precluding dismissal under Rule 12(b)(6) on this basis. See Northern States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1056-57 (8th Cir. 2004) (citing Rule 8(a) and stating that "[t]he essential function of notice pleading is to give the

opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.") (citation and internal quotations omitted)).  Thus, Ester's failure to adequately plead the elements of a Bivens cause of action is not a basis for dismissing his Amended Complaint, as this is something that can be cured if he is permitted to amend his Amended Complaint.  This then leads to the issue of whether the changes Ester seeks to make in his proposed Second Amended Complaint are futile, and the ultimate issue of whether defendants are entitled to dismissal of that pleading on the basis of futility.

### C.    Malicious Prosecution Claim

In his Amended Complaint, Ester claimed defendants violated his constitutional rights "through malicious prosecution and violated the plaintiff's 4th, 5th, and 14th amendment right's [sic]."  Similarly, in his proposed Second Amended Complaint, Ester alleged that defendants violated his violated his constitutional rights "through malicious prosecution and violated the plaintiff's 4th, 5th, and 14th amendment right's [sic]."  This Court interprets this language to mean that Ester is seeking redress from defendants under Bivens for the alleged malicious prosecution and separately for the alleged violation of his Fourth, Fifth and Fourteenth Amendment rights. With regards to Ester's malicious prosecution claim, defendants argued that this claim should be dismissed, as a claim for malicious prosecution is not punishable under Bivens.  See Defs.' Amend. Opp. at pp. 2-3.

A "Bivens claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights."  Buford v. Runyon, 160 F.3d 1199, 1203 n. 6 (8th Cir. 1998)

13

(citation omitted). "The Constitution does not mention malicious prosecution nor do plaintiffs cite a basis for a federal action for malicious prosecution." Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001).   The Eighth Circuit has held that a claim for malicious prosecution is not punishable under § 1983 and Bivens because they do not allege a constitutional injury. Id. (§ 1983); see also Gordon v. Hansen, 168 F.3d 1109, 1114 (8th Cir. 1999) ("a claim for malicious prosecution . . . is not punishable under section 1983, or Bivens, because it does not allege a constitutional injury.") (citation omitted).   Given that Ester's malicious prosecution claim in both his Amendment Complaint and proposed Second Amended Complaint does not allege a constitutional injury, this Court recommends that Agent Faflak and Detective Sebesta's motion to dismiss be granted as to Ester's claim for malicious prosecution, and that Ester's expanded claim of malicious prosecution as set forth in the "2d Amended Cause of Action" of his proposed Second Amended Complaint be denied.

> **D.    Fourth Amendment Claims**

Defendants argued that Ester has failed to state a claim for violating his Fourth Amendment freedom from unreasonable seizure because (1) Ester's arrest pursuant to a warrant was based on the a grand jury's finding of probable cause; (2) Ester's arraignment extinguished any damages for a false imprisonment claim; (3) bare allegations of malice do not set forth a constitutional claim; and (4) Ester has failed to plead with sufficient particularity a claim of conspiracy under 42 U.S.C. § 1985. See Defs.' Mem. at pp. 12-20; see also Defs.' Amend. Opp. Mem. at pp. 4-12.

> 1.    Whether Ester's Fourth Amendment Claim is Barred by an Indictment and

Subsequent Arrest Warrant based on the Grand Jury's Finding of Probable
Cause.

Defendants argue that Ester has failed to state a Fourth Amendment claim based on
the seizure of his person because his arrest was based on probable cause as evidenced by
the issuance of a grand jury indictment.  See Defs.' Mem. at p. 16; see also Defs.' Reply at pp.
5-6; Defs.' Amend. Opp. Mem. at pp. 8-9.  In the criminal matter underlying Ester's present civil
rights case, 00-cr-48 (MJD/JGL), Ester was indicted by a grand jury on one count of allegedly
distributing crack cocaine.  See Exhibit 1 to Defs.' Mem. (Criminal Docket for 00-cr-48
(MJD/JGL).  On the same day, a bench warrant was issued for Ester's arrest.  Id.  "[A]n
indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively
determines the existence of probable cause and requires issuance of an arrest warrant without
further inquiry." Gerstein v. Pugh, 420 U.S. 103, 117 n. 19 (1975) (citations omitted); see also
Kalina v. Fletcher, 522 U.S. 118, 129 (1997) (noting that a grand jury indictment satisfies the
Fourth Amendment's requirement that an arrest warrant must be based on probable cause).

However, Ester's proposed Second Amendment Complaint asserts that Agent Faflak
and Detective Sebesta violated his Fourth Amendment rights "by submitting a fabricated
controlled buy to a grand jury  in hopes that the grand jury would indict and [to] bolster the
appearance of probable cause to a Magistrate or Judge to sign [his] arrest warrant when they
knew no probable cause reasonably existed for the arrest."  Id., ¶ 1.  The Eighth Circuit has
found meritless defendants' argument that a grand jury's indictment insulates officers from
liability for false arrest, as such a holding "would eliminate all § 1983 lawsuits for false arrest, a

result contrary to congressional intent." Arnott v. Mataya, 995 F.2d 121, 124 n. 4 (8th Cir.

1993); cf., Ames v. United States, 600 F.2d 183, 185 (8th Cir. 1979) ("[A]bsent any specific

allegation, such as the presentation of false evidence or the withholding of evidence, the grand

jury indictment breaks any chain of causation linking the employees' activities to the institution

of criminal proceedings, thus insulating the F.B.I. and Justice Department employees from tort

liability."). Defendants have presented no cases from the Eighth Circuit standing for the

proposition that Fourth Amendment false arrest claims are precluded by an indictment being

issued by a grand jury for the purposes of a Rule 12(b)(6) motion.[3]

---

[3]      Defendants have cited to Moiser v. Blum, 875 F.2d 202 (8th Cir. 1989) and Fair v.
Fulbright, 844 F.2d 567 (8th Cir. 1988) in support of their assertion that an indictment ends the
issue of law enforcement officer liability under Bivens for false arrest in violation of a
individual's Fourth Amendment rights.  See Defs.' Amend. Opp. Mem. at p. 8. However,
neither case stands for the proposition that an officer is immune from liability under Bivens for
false arrest in violation of an individual's Fourth Amendment rights where the defendant is
alleged to have provided false information to a grand jury in support of the issuance of an
indictment. In Moiser, a Missouri probation and parole officer arrested the plaintiff on May 15,
1985 for violation of his parole. Id. at 203. Moiser was incarcerated until June 18, 1985, when
parole officials discovered that he was actually only subject to parole supervision until February
20, 1985.  Id.  Moiser brought a § 1983 claim asserting that one of the defendants
"'maliciously' issued a Probation and Parole Violation Warrant for his arrest without proper
jurisdiction."  In finding that the defendant was entitled to qualified immunity, the Eighth Circuit
relied on false arrest cases which held that an arrest executed pursuant to a facially valid
warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the
arresting officer.  Id. at 204 (citing Fair v. Fulbright, 844 F.2d 567 (8th Cir. 1988)).  The court
did not address the issue presented here—whether an arrest pursuant to an indictment
insulates an officer from liability for allegedly manufacturing false evidence that leads to an
indictment.  In Fair, the court found that the uncontroverted facts revealed that the defendant
arrested the plaintiff pursuant to facially valid warrants and that "[a]n arrest executed pursuant
to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. §
1983."  844 F.2d at 569.  However, the Eighth Circuit refused to consider whether the
defendant gave false information that was used to obtain the arrest warrants because the
claim was neither specifically set forth in the complaint nor raised in the defendant's response

The core of Ester's case goes to his assertion that false information was collected by Agent Faflak and Detective Sebesta and that Agent Faflak presented this information to the grand jury, leading to the issuance of the Indictment and his resulting arrest.  If Ester's allegations are true, then a trier-of-fact could conclude that there would have been no finding of probable cause by the grand jury, the issuance of the indictment and warrant, or Ester's resulting arrest. As such, this Court cannot find a matter of law that a finding of probable cause by the grand jury shields defendants' from a finding of liability when Ester has alleged that defendants' illegal actions resulted in the probable cause finding in the first place.  On this basis, this Court cannot recommend that defendants' motion to dismiss Ester's Fourth Amendment claim be granted.

2.      Whether Ester's Arraignment Extinguishes Damages for a False Imprisonment Claim

It is the defendants' position that once Ester was arraigned by a federal magistrate judge and a detention order issued, Ester's Fourth Amendment claim, seeking damages for the unlawful restraint of his person and loss of liberty caused by spending six months in jail, fails to state a claim for which relief can be granted.  See Defs.' Mem. at p. 17.  In his Amended Complaint Ester alleged that he was seeking damages for the unlawful restraint of his person and loss of liberty arising out of a six-month incarceration.  In his proposed Second Amended Complaint, Ester also seeks damages for his incarceration arising out of the drug charges alleged in criminal matter 00-cr-48 (MJD/JGL).

to the motion for summary judgment. Id. at 569.

17

The Constitution under the Fourth Amendment guarantees the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV (emphasis added). "'A seizure is a single act, and not a continuous fact.'" California v. Hodari D., 499 U.S. 621, 625 (1991) (quoting Thompson v. Whitman, 18 Wall. 457, 471, 21 L.Ed. 897 (1873)); see also Riley v. Dorton, 115 F.3d 1159, 1163 (4th Cir. 1997) ("By its own terms, the Fourth Amendment thus applies to the 'initial decision to detain an accused.'"). This Court also notes that Supreme Court has stated that "[f]rom the time of founding to the present, the word 'seizure' has meant a 'taking possession.'" Hodari D., 499 U.S. at 624. However, in a plurality opinion by the Supreme Court in Albright v. Oliver, 510 U.S. 266 (1994), the Court stated that "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." 510 U.S. at 274; see generally, Cupp v. Murphy, 412 U.S. 291, 294 (1973) ("[T]he detention of the respondent against his will constituted a seizure of his person, and the Fourth Amendment guarantee of freedom from 'unreasonable searches and seizures' is clearly implicated, . . .") (citations omitted).

Defendants have cited to Patterson v. Burge, 328 F. Supp.2d 878 (N.D. Ill. 2004) for the proposition that Bivens claims under the Fourth Amendment may only be based on unlawful arrests and detentions occurring up to the time of the arraignment. See Defs.' Mem. at p. 18. Patterson cites to a line of Seventh Circuit cases holding that the scope of a Fourth Amendment claim for unlawful seizure is limited up until the point of arraignment, when the prosecution is underway, and the interest in not being prosecuted groundlessly is not an interest that the Fourth Amendment protects. See, e.g., Wiley v. City of Chicago, 361 F.3d

994, 998 (7th Cir. 2004) (citations omitted) (rejecting the "continuing seizure" approach); see also Valencia v. Wiggins, 981 F.2d 1440, 1444 (5th Cir.1993) ("As the Fourth Amendment protects against unreasonable 'seizures,' it seems primarily directed at the initial act of restraining an individual's liberty, such as an investigative stop or arrest."). Other circuits have disagreed. Some circuits have found that a seizure continues at least as long as an arrestee is in the custody of the arresting officers. See e.g., Fontana v. Haskin, 262 F.3d 871, 879 (9th Cir. 2001) ("Fourth Amendment prohibition against unreasonable search and seizure continues to apply after an arrestee is in the custody of the arresting officers.") (citation omitted); McDowell v. Rogers, 863 F.2d 1302, 1306 (6th Cir. 1988) (holding that Fourth Amendment seizure "continues throughout the time the person remains in the custody of the arresting officers") (citation omitted). And still other circuits have taken an even broader view of the Fourth Amendment, finding that pretrial detention constitutes a "seizure" under the Fourth Amendment. See e.g., DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005) ("Pretrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure."); Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001) (finding that in order to maintain a Fourth Amendment claim a plaintiff must demonstrate "some post-arraignment deprivation of liberty, caused by the application of legal process, that approximates a Fourth Amendment seizure."); Murphy v. Lynn, 118 F.3d 938, 946 (2d Cir. 1997) ("In sum, while a state has the undoubted authority, in connection with a criminal proceeding, to restrict a properly accused citizen's constitutional right to travel outside of the state as a condition of his pretrial release, and may order him to make periodic court

appearances, such conditions are appropriately viewed as seizures within the meaning of the Fourth Amendment.").

The Eighth Circuit has not dealt with the issue of whether pretrial detention constitutes a seizure for the purposes of the Fourth Amendment.  Having considered the analyses of the various other circuits, this Court concludes that under the facts alleged by Ester, that the arraignment did not cut off his claim for false imprisonment.

In this case, Ester is seeking damages because defendants allegedly presented a fabricated controlled buy to the grand jury, which led to the unlawful restraint of his person until his case was ultimately dismissed by the prosecutor at trial.  If Ester's allegations are indeed true, then the chain of causation between the defendants' alleged actions and his continued detention through his trial was not broken by his arraignment.  In other words, there is nothing about the arraignment that changed the fact that Ester was being illegally detained because of the false evidence put forward by defendants.  Defendants' suggestion that once the arraignment occurred, causation was broken (i.e. "proximate cause is lacking") because at that point his prosecution was taken over by the prosecutor, is rejected.  See Defs.' Reply, at pp. 7-8.  As alleged, the underlying premise of Ester's suit is that but for the fabricated testimony and evidence created and presented to the prosecutor and grand jury by the defendants, the grand jury never would have indicted Ester and the prosecutor could not have proceeded with the charge that lead to his false arrest and detention. In light of the Supreme Court's finding that the framer's drafted the Fourth Amendment to address pretrial detentions, this Court concludes that if Ester's allegations are true, defendants would be responsible

under the Fourth Amendment for damages resulting from his entire pretrial detention and not just up to the point of his arraignment.   Therefore, this Court will not recommend that Ester's Fourth Amendment claim against defendants be dismissed on this basis.

In summary, this Court cannot recommend that defendants' motion to dismiss Ester's Fourth Amendment claims be granted.   In addition, the Court will permit Ester to amend his Amended Complaint to allege that defendants violated his Fourth Amendment rights.[4]

### E.   Due Process Claims under the Fifth and Fourteenth Amendments

Ester claims that he was deprived of liberty without due process of the law.   See Amended Complaint; see also proposed Second Amended Complaint.   Ester appears to argue in his opposition memorandum that he has adequately set forth a substantive due process and procedural due process clam under the Fifth Amendment.[5]   See Pl.'s Mem. at p. 9.   First, this Court finds that there is no substantive due process claim against law enforcement officers who initiate criminal proceedings against a plaintiff, as the right to be free from criminal prosecution, except upon probable cause, fails to state a substantive due process claim.   See Technical Ordnance, Inc. v. United States, 244 F.3d 641, 650-51 (8th Cir.

---

[4]      While this Court finds that Ester's Fourth Amendment claim states a claim for relief, it is still recommending that summary judgment be granted to defendants on this claim based on the defense of qualified immunity.  See Section III.C, infra.

[5]      This Court notes that plaintiff has also brought a claim under the Fourteenth Amendment to the Constitution in both his Amended Complaint and his proposed Second Amended Complaint.  However, the Fourteenth Amendment is not applicable to the federal government.  See Carhart v. Gonzales, 413 F.3d 791, 795 n. 2 (8th Cir. 2005).  Since Agent Faflak and Detective Sebesta, are federal actors for the purposes of this case, defendants' motion to dismiss as to plaintiff's claims under the Fourteenth Amendment should be granted.

2001) (citing <u>Albright</u>, 510 U.S. at 276-81).[6]

Second, this Court finds that plaintiff does not set forth a cognizable procedural due process claim under the Fifth Amendment.  "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in life, liberty or property, is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law."  <u>Zinermon v. Burch</u>, 494 U.S. 113, 125 (1990) (emphasis in original).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333  (citation omitted).  As stated previously, Ester has asserted that defendants fabricated a controlled buy in order to present it to a grand jury and to ultimately obtain an unlawful arrest of his person.  The thrust of Ester's claims go to what he alleges to be the unlawful deprivation of his liberty prior to trial.  However, as stated previously, Supreme Court has found that "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."  <u>Albright</u>, 510 U.S. at 274.   Given that Ester's claim seeks relief for defendants' pretrial deprivation of his liberty, the Fourth, and not Fifth, Amendment, is the amendment applicable to his claim.  As such, this Court finds that plaintiff's Fifth and Fourteenth Amendment claims should be dismissed, and his motion to permit the filing of his proposed Second Amended Complaint to expand on these claims should be denied.

---

[6]     This Court also notes that Ester has not alleged any facts in his Amended Complaint or proposed Second Amended Complaint to put defendants on notice that he was asserting a substantive due process claim against them.

### F.    Claims under 42 U.S.C. § 1985

Defendants argue that Ester has failed to properly plead a constitutional conspiracy.

See Def.'s Mem. at pp. 19-20.  Title 42 U.S.C. § 1985(3)[7] provides in relevant part:

> If two or more persons in any State or Territory conspire . . . for
> the purpose of depriving, either directly or indirectly, any person
> or class of persons of the equal protection of the laws . . . [and] if
> one or more persons engaged therein do, or cause to be done,
> any act in furtherance of the object of such conspiracy, whereby
> another is injured in his person or property, or deprived of having
> and exercising any right or privilege of a citizen of the United
> States, the party so injured or deprived may have an action for
> the recovery of damages, occasioned by such injury or
> deprivation, against any one or more of the conspirators.

To establish a claim under § 1985, Ester must demonstrate: (1) a conspiracy; (2) for

the purpose of depriving another of equal protection of the law; (3) an act in furtherance of the

conspiracy; and (4) an injury to a person or property, or deprivation of a legal right.  See

Federer v. Gephardt, 363 F.3d 754, 757-58 (8th Cir. 2004) (citation omitted); see also

Larson by Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir.1996) (en banc). Claims under §

1985(3) also require a plaintiff to demonstrate a racial or class-based animus.  See Griffin v.

Breckenridge, 403 U.S. 88, 102 (1971); see also City of Omaha Employees Betterment

Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989) ("The 'purpose' element of the

conspiracy requires that the plaintiff prove a class-based 'invidiously discriminatory animus.'")

(citation omitted); Bartell v. Lohiser, 215 F.3d 550, 560 (6th Cir. 2000) (finding that § 1985(3)

---

[7]      While Ester has not identified the specific subsection of § 1985 he is suing under in his
Amended Complaint or proposed Second Amended Complaint, his memorandum of law
provides that he suing under § 1985(3).  See Pl.'s Mem. at p. 4.

covers only those "conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) 'those individuals who join together as a class for the purpose of asserting certain fundamental rights.'") (quoting Browder v. Tipton, 630 F.2d 1149, 1150 (6th Cir. 1980)).

Rule 8(a) of the Federal Rules of Civil Procedure provides in relevant part that a plaintiff need only include "a short and plain statement of the claim showing that the pleader is entitled to relief, . . ." However, the Eighth Circuit has found that a claim for conspiracy must be alleged with more particularity than is normally required by Rule 8(b) of the Federal Rules of Civil Procedure." A plaintiff must allege with 'sufficient particularity' . . . that the parties reached some agreement and conspired together to deprive plaintiff of a federal right." Gometz v. Culwell, 850 F.2d 461, 464 (8th Cir. 1988) (citation omitted); see also Marti v. City of Maplewood, Missouri, 57 F.3d 680, 685 (8th Cir. 1995) ("'[T]he [appellants] must allege with particularity and specifically demonstrate with material facts that the Unions reached an agreement.' This showing can be accomplished by pointing to facts suggesting that the appellees reached an understanding to violate appellants' civil rights.") (quoting Employees Betterment Ass'n v. Omaha, 883 F.2d 650, 652 (8th Cir. 1989)). In addition, a plaintiff must allege, in conjunction with the conspiracy, that the defendants acted with class-based discriminatory animus. See Cwick v. Life Time Fitness, Inc., No. Civ.04-2731 (PAM/RLE), 2004 WL 2065063 at *4 (D. Minn. Sept. 2, 2004) (finding that because the plaintiffs alleged that defendants engaged in a conspiracy, plaintiffs were required to allege that defendants acted with class-based discriminatory animus).

In this case, the only portion of Ester's Amended Complaint that discusses a conspiracy provides that defendants "conspired to . . . violate plaintiff's civil and constitutional rights . . .", and that defendants "conspired to maliciously prosecute me. . . ." Amended Complaint at pp. 1, 2.  In his proposed Second Amended Complaint, Ester alleged that defendants "conspired to initiate a malicious prosecution by fabricating a controlled buy of narcotics against me" and then "conspired to present narcotics that they obtained from a source other than I, along with an unclear audio and other alleged evidence as a result of their misconduct to a prosecutor and grand jury to obtain an Indictment against me, . . ."  Neither Ester's Amended Complaint nor his proposed Second Amended Complaint set forth any allegations or facts regarding an agreement or understanding to violate his civil rights.

This Court finds that Ester's failure to plead a meeting of the minds and that defendants acted with class-based invidiously discriminatory animus is fatal.  For all of these reasons, this Court recommends that defendants' motion to dismiss as it relates to Ester's § 1985 claim be granted, and his motion to expand this claim through the proposed Second Amended Complaint be denied.

In conclusion, this Court recommends that defendants' motion to dismiss Ester's malicious prosecution, violations of the Fifth and Fourteenth Amendments, and his claims under 42 U.S.C. §§ 1983 and 1985 be granted and that Ester's attempt to expand these claims in his proposed Second Amended Complaint be denied on the grounds that they are futile.  At the same time, this Court recommends granting Ester's motion to amend his Amended Complaint to expand his Fourth Amendment claim as described in his proposed

Second Amended Complaint.

## III.   MOTION FOR SUMMARY JUDGMENT

As stated previously, defendants have brought a Motion for Summary Judgment seeking to dismiss Ester's case on the grounds that Agent Faflak is entitled to absolute immunity and because Agent Faflak and Detective Sebesta are entitled to qualified immunity. See Defs.' Mem. at pp. 26-37; Defs.' Reply Mem. at pp. 10-21.

### A.   Standard of Review

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999). "[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" DePugh v. Smith, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of

St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). If the moving party

has carried its burden, the non-moving party must demonstrate the existence of specific facts

in the record that create a genuine issue for trial. Anderson, 477 U.S. at 256; Krenik v. County

of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). "The nonmoving party may not rest on mere

allegations or denials, but must show through the presentation of admissible evidence that

specific facts exist creating a genuine issue for trial." Minnesota Laborers Health & Welfare

Fund v. Swenke, 2003 U.S. Dist. LEXIS 11439, *4-5 (D. Minn. 2003) (citations omitted). The

non-moving party "must substantiate his allegations with sufficient probative evidence that

would permit a finding in [their] favor based on more than mere speculation, conjecture, or

fantasy." Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995). If the evidence is

"merely colorable or is not significantly probative, summary judgment may be granted."

Anderson, 477 U.S. at 249-50.

### B.    Absolute Immunity

Defendants claim that Agent Faflak is entitled to absolute immunity for his grand jury

testimony. See Defs.' Mem. at p. 26. Ester stated in his responsive memorandum that Agent

Faflak was not being sued for his grand jury testimony. Pl.'s Mem. at p. 10.

The Eighth Circuit has held that when a defendant's participation in a criminal matter is

related to his testimony before a grand jury, they are entitled to absolute immunity. See Perez

v. Gaffey, No. 98-1250, 168 F.3d. 494, 1998 WL 850018 at *1 (8th Cir. Dec. 10, 1998) (string

citation omitted). Ester has asserted in his proposed Second Amended Complaint that Agent

Faflak "played the entire role of a complaining witness in presenting the fabricated buy to the

grand jury buy [sic] personally testifying to being a witness of the fabricated crime." Proposed Second Amended Complaint at p. 2. Agent Faflak is entitled to absolute immunity against plaintiff's Fourth Amendment claim as it relates to his testimony before the grand jury. As such, defendants' Motion for Summary Judgment pertaining to Agent Faflak's grand jury testimony should be granted.

However, the absolute immunity afforded to Agent Faflak as a witness before the grand jury does not protect him with regards to his investigatory activities, which Ester has alleged involved fabricating evidence of a controlled buy in order to have Ester arrested. See Perez, 1998 WL 850018 at *1 (finding that while absolute immunity would be available to a defendant who was a grand jury witness, qualified immunity and not absolute immunity would be applicable to their investigatory activities). As such, Agent Faflak is not entitled to summary judgment based on absolute immunity for his alleged activities outside of providing testimony to the grand jury.

### C.    Qualified Immunity

Next, defendants argued that summary judgment should be granted on Ester's entire suit against them based on qualified immunity. Defendants presented three grounds in support of their contention that they were entitled to a finding of qualified immunity as a matter of law. First, they asserted that the Amended Complaint did not allege a constitutional violation. Defs.' Mem. at p. 31. Second, they claimed that the law did not clearly establish that the constitution protected an individual from arrest where the grand jury had indicted Ester and a judge issued a warrant for his arrest. Id. at pp. 31-33; Defs.' Reply at pp. 11-19. Third, they

argued that even if Ester could demonstrate a clearly established constitutional violation in the face of an indictment issued by a grand jury, defendants were still entitled to a finding of qualified immunity as a matter of law because the undisputed facts show that a reasonable law enforcement officer could have believed that probable cause existed to pursue the indictment based on the facts leading up to the indictment and at the time of Ester's arrest. Id. at 33-37; Defs.' Reply at pp. 19-22.

In opposition, Ester argued that his proposed Second Amended Complaint alleged several constitutional violations, that the facts showed that a reasonable officer would know that it was a constitutional violation to cause an indictment and warrant for arrest to issue on a knowingly fabricated charge lacking probable cause, and that no reasonable officer would have believed that probable cause existed to pursue Ester in the first place. Pl.'s Mem. at pp. 7-9, 11-12.

"'Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'" Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996) (quoting Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995); Malley v. Briggs, 475 U.S. 335 (1986)); see also Saucier v. Katz, 533 U.S. 194, 205 (2001) (stating that "[i]f the officer's mistake as to what the law requires is reasonable, however, the officer is

entitled to the immunity defense").  "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Davis v. Scherer, 468 U.S. 183, 195 (1984)). "The obvious function of the qualified immunity rule is to excuse an officer who makes a reasonable mistake in the exercise of his official duties."  Edwards v. Baer, 863 F.2d 606, 607 (8th Cir. 1988).

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." Wilson v. Layne, 526 U.S. 603, 614 (1999) (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)).  "The lynchpin of qualified immunity is the public official's objective reasonableness." Bagby, 98 F.3d at 1098 (emphasis in original).

The applicability of the qualified immunity doctrine is a question of law and, when qualified immunity is raised as a defense, courts analyze the application of qualified immunity by addressing the following three determinations: (1) whether the officials' conduct violates a clearly established statutory or constitutional right;  (2) whether the officials knew or should have known that the right was clearly established; and (3) whether the officials knew or should have known that their conduct violated that right.  See Tyler v. Barton, 901 F.2d 689, 691 (8th Cir. 1990).

As to defendants' argument that Ester's Amended  Complaint fails to assert a constitutional violation as a matter of law, this Court has already determined that Ester's

proposed Second Amended Complaint, if permitted, would cure any deficiencies in pleading a Bivens action.  See Section II.B, supra.

Defendants also argued that it was not clearly established that a law enforcement officer may violate an individual's constitutional rights by arresting him on a facially valid warrant.  See Defs.' Mem. at p. 33.  In essence, it is defendants' position that it was not clearly established that they violated Ester's constitutional rights when they arrested him based on an indictment that was premised on what he claims was a fabricated drug buy by defendants. This Court has already concluded if defendants presented false evidence to the prosecution and grand jury, the fact that an indictment has issued does not insulate them from liability for violating Ester's clearly defined right to be free of being unlawfully detained.  See Section, II.D.1, supra.

Thus, the question for this Court to determine is whether there is a genuine issue of material facts as to whether defendants' conduct violated the Fourth Amendment.  In this regard, Ester argued that defendants are not entitled to qualified immunity because under the facts presented by him, a reasonable officer would not have believed that probable cause existed to arrest him.  In support of this assertion, Ester presented evidence he claims demonstrates that the informant defendants used in the controlled drug buy, Hall, was not a credible individual.  In addition, Ester asserted that the following evidence established that defendants lacked probable cause to believe that Ester had sold drugs to Hall:  Agent Faflak did not search Hall's body before his meeting with Ester; Agent Faflak did not tape record the buy; the officers did not document any buy money for the alleged transaction; the officers did

not search Hall's person after the transaction; and the officers did not stop or arrest Ester after the he left the bar where the alleged narcotics transaction took place.  See Pl.'s Mem. at pp. 2-3, 12-13 citing to Pl.'s Exs. 1-15 and Plaintiff's Affidavit.

After reviewing the evidence presented by defendants in support of their motion for summary judgment and by Ester in opposition to the motion, this Court concludes that defendants are entitled to summary judgment on Ester's Fourth Amendment claims based on qualified immunity because the undisputed facts establish that defendants did not violate his Fourth Amendment rights.

1.    The Informant

Ester initially focused on defendants' reliance on Hall, an informant that had a criminal record, had allegedly previously lied to police, may have been involved in a murder, and was declared to be bipolar.   See Pl.'s Mem. at p. 12.  In support of these contentions, Ester submitted portions of the transcript from Ester's trial.  These transcript excerpts set forth the following:

- There was some suspicion by law enforcement officers that Hall was involved with a homicide and that he may have lied to law enforcement officers about his whereabouts on the night the murder took place.  See Pl.'s Exs. 1, 2.

- Hall had been pulled over by police on September 1, 1999 and a weapon was found in the vehicle, and Agent Faflak would have been aware of this fact from reading the reports of other police officers on the stop of Hall.  See Pl.'s Ex. 12.

- Hall was arrested by Minneapolis homicide detectives based on tips

they received related to a murder investigation.  <u>See</u> Pl.'s Ex. 13.

- Agent Faflak received a call from investigators that a reliable informant, Hall, had information on a drug ring and that he claimed that he had been a Florida DEA informant in the past.  <u>See</u> Pl.'s Ex. 13; <u>see also</u> Faflak Decl., ¶ 2.

- To the best of Agent Faflak's knowledge, based on Hall's history, Hall had always been truthful to police.  <u>See</u> Pl.'s Ex. 9.

- While Agent Faflak was aware that Hall had an extensive list of criminal charges, Agent Faflak was not aware that there had been a charge in the past against Hall for providing false information to police.  <u>See</u> Pl.'s Ex. 9.  Agent Faflak did note that were 29 arrests in Florida and that many of them were either not charged out or dismissed.  <u>Id.</u>

- Agent Faflak was aware that Hall had engaged in drug activities. However, Agent Faflak testified that Hall did not sell drugs to Ester on the night the controlled buy at issue took place.  <u>See</u> Pl.'s Ex. 10.

- Agent Faflak did not seek information from Florida regarding Hall's past trustworthiness as an informant since the records were so old.  Pl.'s Ex. 11.

- After the Government had moved to dismiss the case against Ester, District Judge Michael Davis stated that Hall had some bipolar mental illness.  The prosecutor was not aware of this information.  <u>See</u> Pl.'s Ex. 14.

From this evidence, Ester argued that defendants knew they did not have a reasonable basis for pursuing an indictment of Ester.   However, assuming for summary judgment purposes that Hall had a criminal background and was person of questionable and unsavory character, does not lead to the conclusion that defendants could not use him in their investigation of Ester or rely on Hall's report to them that he had purchased crack cocaine from Ester on October 4, 1999.   Under Ester's theory, law enforcement officers could never

reasonably rely on an informant who has a criminal history.  If this were the rule, then use of informants by law enforcement would be severely hampered, given that many informants have criminal records or unsavory characters.[8]  See generally, United States v. King, 351 F. 3d 859, 868 (8th Cir. 2003) ("We do not dispute that it was quite likely that Kingsley's character was flawed, but we recognize, like the magistrate judge did, that the use of unsavory informants is quite often the nature of the beast in police investigations."); United States v. Flagg, 919 F.2d 499, 501 (8th Cir. 1990) ("[A] magistrate generally would not be misled by the alleged omission of facts in this case because informants frequently have criminal records. . . .") (citation omitted).

Further, the facts presented by Ester do not lead to the conclusion that Hall was so unreliable that no reasonable officer would have relied upon him for information.  While there may have been a charge of Hall giving false information to police, Ester presented no evidence that Hall was ever convicted on that charge.  Additionally, the fact that Hall may have received a benefit for his cooperation does not render defendants' reliance on the information provided by Hall unreasonable.  See United States v. Carpenter, 422 F.3d 738, 744 (8th Cir. 2005) ("[I]nformants are often motivated 'in the hopes of obtaining leniency with respect to their own situation [but] that does not necessarily mean they are unreliable.") (quoting United States v. Gabrio, 295 F.3d 880, 884 (8th Cir. 2002)).  Similarly, the fact that Hall may have had a

---

[8]      Moreover, the issue of informant credibility does not need to be presented to a grand jury by a prosecutor, let alone an investigator on a case. United States v. Spillone, 879 F.2d 514, 523 (9th Cir. 1989) ("[P]rosecutor has no duty to present evidence bearing on witness credibility to the grand jury.").

history of mental illness bears no relevance to the actions of defendants since there was no evidence presented that a mental illness affected Hall's reliability as an informant or that defendants even knew about Hall's mental illness.  See Gabrio, 295 F.3d at 884.

More importantly, defendants did not just take Hall's word regarding Ester's activities; they also corroborated some the information provided by Hall.  Specifically, Agent Faflak corroborated that Hall had correctly identified the known residence of drug ring members, and that he also had the telephone numbers of ring members, including Ester's phone number. See Faflak Decl., ¶ 3.

Based on the undisputed facts, this Court finds that use of Hall as an informant did not violate a clearly established constitutional right.

### 2.   Search of Hall's Body Before His Meeting with Ester

On October 1, 1999, Hall told Agent Faflak that he had set up a drug buy with Ester for October 4, 1999.  Faflak Decl., ¶ 4.  On October 4, 1999, Agent Faflak picked up Hall and transported him to the 5th Precinct of the Minneapolis Police Department, where he was searched before the controlled buy and outfitted with an audio transmitting device pursuant to standard practice.  Id., ¶ 5; see also Sebesta Decl., ¶ 4.  Nevertheless, Ester argued that because Faflak testified that he did not check Hall's body prior to the controlled buy, that renders the defendants' belief that there was probable cause to charge Ester with possession of cocaine unreasonable.

The testimony of Agent Faflak at Ester's trial was as follows:

> Q.   And <u>before</u> you searched Mr. Hall at the Precinct, did you
> check his body?
>
> A.   No, sir.

<u>See</u> Pl.'s Ex. 4 (emphasis added).

This Court interprets this testimony from Agent Faflak to mean that prior to searching

Hall at the precinct, Agent Faflak had not conducted any searches of Hall's body. However,

even if Agent Faflak did not search Hall prior to the controlled buy, the undisputed facts are that

Detective Sebesta did search Hall before his encounter with Ester:

> I personally searched Selwyn Hall at the 5th Precinct of the
> Minneapolis Police Department.   I used the same search
> techniques that I use in preparing for any controlled buy from a
> target.

<u>See</u> Sebesta Decl., ¶ 4.  Ester has provided no evidence to this Court to refute Detective

Sebesta's sworn statement that he searched Hall prior to the controlled buy.  As such, this

Court finds that the undisputed evidence in the record supports a finding that Hall's person was

searched prior to the controlled buy on October 4, 1999, and that defendants did not violate a

clearly established constitutional right by doing so.

### 3.   <u>Failure to Tape Record the Transaction</u>

Subsequently, Agent Faflak drove Hall to the Champion Bar's parking lot.  <u>See</u> Faflak

Decl., ¶ 6.  Hall entered Champion's Bar and left ten minutes after, reporting that he had met

with Ester and had purchased one bag containing five rocks of a white substance that later

was tested to be 22 grams of crack cocaine.  <u>See</u> Faflak Decl., ¶ 7; Sebesta Decl., ¶ 7; <u>see</u>

<u>also</u> Pl.'s Ex. 7.  Hall also told police that Ester was accompanied by an African American

36

woman with blond hair and surveillance officers observed Ester leaving Champion's bar in the company of a blond female.  See Faflak Decl., ¶¶ 7 -8; Sebesta Decl., ¶ 8; see also Pl.'s Ex. 7. While Hall had been outfitted with an audio transmitter to permit Detective Sebesta to listen to the meeting between Hall and Ester, the distance and background noise in the bar prevented Detective Sebesta from overhearing Ester's alleged encounter with Hall.  See Faflak Decl., ¶ 9; Sebesta Decl., ¶ 2.  However, Hall was unaware of this fact when he communicated to officers what had occurred inside Champion's Bar.  Id.  The encounter was not tape-recorded. See Pl.'s Ex. 5.

Ester argues that the failure of the officers to attempt to tape record the controlled buy is evidence of defendants' fabrication.  But Ester has not provided this Court with any authority, nor can this Court find any, requiring law enforcement officers to record their electronic surveillance of a suspect before they can pursue the prosecution of that person.[9]

---

[9]    This Court notes that Ester's argument that defendants' failure to tape record the controlled buy is evidence of their fabrication is the opposite of that which he alleged in the proposed Second Amended Complaint:

> In furtherance of the conspiracy to fabricate the controlled buy S/A Faflak intentionly [sic] documented and used a recording device to pick up a conversation inside of a public and noisy bar that he knew would not display anything but static, but nevertheless used the device to present an appearance of compliance with standard procedure and bolster the fabricated buy.  Sebesta assisted by documenting that he had conducted surveillance on the controlled buy but in fact never saw any illegal activity.  S/A Faflak and Sebesta the conspired to present narcotics they obtained from a source other than I, along with an unclear audio and other alleged evidence as a result of their misconduct to a prosecutor and grand jury to obtain an indictment against me.

Moreover, whether Ester should have been indicted without a tape recording of controlled buy was solely within the purview of the grand jury—i.e. it was up to the grand jury, not the defendants, to decide whether to issue an indictment under these circumstances. Further, the fact that defendants did not tape record the controlled buy, cannot lead to the conclusion that defendants fabricated the buy, particularly where Hall did not know that the audio transmission failed when he represented to officers that he had purchased 22 ounces of crack from Ester.  Stated differently, a reasonable officer could rely on the representations of an informant who conducts a drug buy under the belief that he is being monitored by police, and comes out of the alleged buy with 22 ounces of crack.  See Adams v. Williams, 407 U.S. 143, 146-47 (1972) (finding that the credibility of the informant is enhanced when the informant is subject to immediate arrest for making a false complaint); see also Minn. Stat. § 609.505, subd. 1.[10]

For all of these reasons, this Court finds that failure to tape record the alleged

---

See proposed Second Amended Complaint at ¶ 1 at p. 2 (emphasis added).  Ester's claims in the proposed Second Amended Complaint are primarily based on his allegation that defendants presented an unclear audiotape to the grand jury—not that defendants did not tape record the events, as he now asserts.

[10]     Minn. Stat. § 609.505 provides:

> Whoever informs a law enforcement officer that a crime has been committed or otherwise provides information to an on-duty peace officer, knowing that the person is a peace officer, regarding the conduct of others, knowing that it is false and intending that the officer shall act in reliance upon it, is guilty of a misdemeanor. A person who is convicted a second or subsequent time under this section is guilty of a gross misdemeanor.

encounter between Hall and Ester did not violate a clearly established constitutional right.

### 4.   Failure to Document the Buy Money Used for the Transaction

Ester also relies on defendants' alleged failure to document any of the money resulting from the controlled buy to show that defendants fabricated the drug transaction.  In support of this contention, Ester points to the failure of Detective Sebesta to state in his Declaration and Agent Faflak's failure to provide in his report that they searched Hall to determine if he had any of the buy money on his person.  See Pl.'s Mem. at pp. 2-3 (citing Pl.'s Exs. 3, 6).

As a preliminary matter, this Court notes that Ester was charged with violating 21 U.S.C. § 841, which only makes it illegal to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. . . ."  There is no requirement that money exchange hands in order for a violation of § 841 to take place.

However, even assuming that defendants' silence means that Hall was not searched for the buy money after the transaction, the reliance of defendants on the representations of Hall that he bought the drugs from Ester cannot be found unreasonable, given that Hall had been searched by police prior to going into Champion's Bar, Hall believed he was under surveillance by police during the buy, Hall came out of Champion's Bar with crack cocaine, and police corroborated Hall's claim that Ester was in the bar with a blond African American woman.  Further, Ester presented no evidence in opposition to defendants' motion for summary judgment that defendants misrepresented to the prosecutor or to the grand jury that they had accounted for the buy money.  Finally, to the extent that Ester was indicted without any evidence that Hall was searched after the controlled buy, was an issue under the control of the

prosecutor or grand jury and not defendants.

For all of these reasons, this Court concludes that an alleged failure to document the buy money after the transaction does not constitute a violation of a clearly established constitutional right.

### 5. Failure of Defendants to Stop Ester After Transaction

Finally, this Court concludes that Ester's argument that defendants' failure to stop him after the controlled buy is without merit. The undisputed testimony from Ester's trial demonstrates that officers attempted to follow him after he left the bar but lost him in traffic. See Pl.'s Ex. 7. Regardless, this Court finds that defendants' failure to stop Ester on the night of the controlled buy does not provide any evidence that defendants fabricated the October 4, 1999 drug buy between Ester and Hall.

In sum, Ester has not provided this Court with any direct evidence to contradict defendants' sworn statements that they did not fabricate the drug buy and that they did not present fabricated evidence to the prosecutor or to the grand jury. While it could be argued that the Government's case against Ester would have been stronger had defendants tape recorded the controlled buy by Hall and checked Hall's history as an informant, defendants' failure to perform these activities does not deprive them of qualified immunity. See Bagby, 98 F.3d at 1098 (finding that the doctrine of qualified immunity gives ample room for mistaken judgments). Lacking evidence of fabrication by defendants, this Court finds that once the grand jury issued the Indictment, defendants' actions in arresting plaintiff did not violate his Fourth Amendment rights, and defendants are entitled to qualified immunity.

## IV.   CONCLUSION

This Court had determined that Ester's Fourth Amendment claim survived defendants' motion to dismiss.   Nevertheless, defendants are entitled to summary judgment because based on the undisputed evidence presented to this Court, they are entitled to qualified immunity on this remaining claim.

## RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein, IT IS RECOMMENDED that:

1.     Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 39] be **GRANTED** in part and **DENIED** in part as follows:

  a.     Defendants' Motion to Dismiss should be **GRANTED** as to plaintiff's claims of malicious prosecution, violations of the Fifth and Fourteenth Amendments, and plaintiff's claims under 42 U.S.C. §§ 1983 and 1985.

  b.     Defendants' Motion to Dismiss should be **DENIED** as to plaintiff's Fourth Amendment Claim under Bivens.

  c.     Defendants' Motion for Summary Judgment should be **GRANTED** as to plaintiff's Fourth Amendment Claim under Bivens.

  d.     In light of this Court's recommendations in paragraphs 1(a) and (c), that plaintiff's suit against defendants be dismissed with prejudice.

2.     Plaintiff's Motion to Amend/Correct Amended Complaint [Docket No. 44] be **GRANTED** in part and **DENIED** in part as follows:

  a.     Ester's attempt to expand his claims for malicious prosecution, violations of the Fifth and Fourteenth Amendments, and claims under 42 U.S.C. §§ 1983 and 1985 in his proposed Second Amended Complaint should be **DENIED** on the grounds that they are futile.

      b.      Ester's motion to amend to expand his Fourth Amendment claim as described in his proposed Second Amended Complaint, should be **GRANTED**.

3.      Plaintiff's Motion Requesting Leave to File a 2nd Amended Complaint and for Stay of Defendant Daniel Paul Faflak and David Sebesta's Motion for Summary Judgment [Docket No. 45] be **DENIED** as moot; and

4.      Plaintiff's Motion Requesting Denial of Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 47] be **DENIED**.

Dated:      August 8, 2006

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 25, 2006**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.